**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**In Admiralty**

**Case No.:**

ACCELERANT SPECIALTY INSURANCE COMPANY, HADRON SPECIALTY INSURANCE COMPANY, PALOMAR EXCESS AND SURPLUS INSURANCE COMPANY, TEXAS INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO UMR NO. B0507G02400002, and CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO UMR NO. B0507GI2500588,

Plaintiffs,

v.

PERSEUS VENTURES LLC
Defendants. /

**COMPLAINT**

Plaintiffs, ACCELERANT SPECIALTY INSURANCE COMPANY, HADRON SPECIALTY INSURANCE COMPANY, PALOMAR EXCESS AND SURPLUS INSURANCE COMPANY, TEXAS INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO UMR NO. B0507G02400002, and CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO UMR NO. B0507GI2500588 (collectively, "Plaintiffs"), hereby sue the Defendant, PERSEUS VENTURES LLC ("Perseus"):

**JURISDICTION AND VENUE**

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

2. Plaintiffs designate this as an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1333, as it involves a dispute regarding a marine insurance contract. Plaintiffs invoke the provisions of Rule 9(h), 38(e), and 82 of the Federal Rules of Civil Procedure.

3. Venue is proper within the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because it has been stipulated as an appropriate venue; the Policy at issue states that disputes shall be heard where the insured or where the insured's agent resides. Perseus's address on the Policy is listed as being in Miami-Dade County, Florida, and the insured's agent also resides in the Southern District of Florida, rendering the Southern District of Florida a contractually agreed-upon venue.

4. All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been complied with.

5. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## PARTIES

6. At all times material to this action, Accelerant is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia.

7. At all times material to this action, Hadron is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia.

8. At all times material to this action, Palomar is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arizona, with its office and principal place of business located in the State of California.

9. At all times material to this action, Texas Insurance is and was a domestic surplus lines insurer organized and existing under the laws of the State of Texas, with its office and principal place of business located in the State of Nebraska.

10. The Certain Underwriters at Lloyd's of London Subscribing to UMR No. B0507G02400002 are made up of two subscribing syndicates: AEGIS Syndicate 1225 AES and Talbot Syndicate 1183 TAL. Each of these syndicates are organized and exist under the laws of the United Kingdom, with offices and principal places of business located in the United Kingdom.

11. The Certain Underwriters at Lloyd's of London Subscribing to UMR No. B0507GI2500588 are made up of three subscribing syndicates: AEGIS Syndicate 1225 AES, HCC Syndicate 4141 HCC, and AMLIN Syndicate 2001 AML. Each of these syndicates are organized and exist under the laws of the United Kingdom, with offices and principal places of business located in the United Kingdom.

12. At all times material to this action, Perseus is and was a limited liability company organized and existing under the laws of the State of Florida.

## FACTUAL ALLEGATIONS

13. This matter arises out of an incident which occurred on or about July 7, 2025, in the waters of the Bahamas.

14. On that day the insured vessel, a 2020 44' Fountaine Pajot with Volvo twin 435hp diesel engine, M/V FINA, HIN: DFP29042A020, (the "Vessel") owned by Perseus, in which the Vessel incurred a partial sinking (the "Incident").

15. On July 7, 2025, the Vessel, captained by Julio Eduardo Araque Vivas ("Vivas"), was travelling from Nassau New Providence, Bahamas to Bimini, Bahamas.

16. After one hour of travel, Vivas noticed black smoke coming from the port side engine compartment.

17. Upon investigation of the port side engine compartment, Vivas noticed that the bilge was taking on water.

18. Vivas sent out a distress call out on VHF Channel 16 with no response and proceeded to contact the Royal Bahamas Defense Force ("RBDF") via the internet.

19. The RBDF sent a ship to assist the Vessel, which proceeded to rescue Mr. Vivas and the passengers aboard the Vessel.

20. As rescue was underway, a marine salvor, Gary Simmons ("Simmons"), made ready in response to the distress call broadcast on VHF Channel 16 and arrived shortly thereafter.

21. A diver was deployed and was unable to find any external damages, thereafter all thru-hulls and openings were plugged and sealed.

22. Simmons observed the source of water ingress as the port engine exhaust discharge hose having detached from the exhaust system. This hose was reattached, the vessel dewatered and taken in tow by Simmons to safe harbor.

23. Perseus and Ballestas submitted a claim for coverage arising out of the Incident on a policy of marine insurance that Plaintiffs issued to him, Policy No. CSRYP/2502278, with effective dates of April 12, 2025, to April 12, 2026 (the "Policy"). A complete copy of the Policy is attached hereto as **Exhibit "A"**.

24. The Policy provides, *inter alia*, $1,075,000 in hull coverage, subject to a $21,500 deductible. *See* Ex. A.

25. The Policy provided, in relevant part, as follows:

> Named Operators: Victor Ballestas; Julio Eduardo Araque Vivas
>
> Additional Warranties, Terms and Conditions:
> Warranted that a professional, licensed captain must be on board whenever the Scheduled Vessel is navigating at all times during Captain Charter use.
>
> Exclusions to Coverage A
>
> Unless specifically agreed by Us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this Insuring Agreement:
>
> ii. Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.
>
> x. Your personal expenses or those of Your Family including but not limited to the cost of Your own labour, hotel or accommodation costs, car rental and communication costs.
>
> xviii. Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

*See* Ex. A.

26. Perseus has sought coverage from Plaintiffs in connection with the subject incident.

27. The subject Policy is a renewal from an earlier policy, policy no. CSRYP/2402539, which had effective dates of April 12, 2024, to April 12, 2025 (the "Third Policy") which was a renewal from an earlier policy, policy no. CSRYP/224009, which had effective dates of April 12, 2023, to April 12, 2024 (the "Second Policy") which was a renewal from an earlier policy, policy no. CSRYP/212194, which had effective dates of April 12, 2022, to April 12, 2023 (the "First Policy").

28. On June 13, 2018, prior to issuing the First Policy, named operator and beneficial owner, Victor Ballestas ("Ballestas"), was issued a citation for speeding. Ballestas failed to pay the

associated fines which resulted in the suspension of his driver's license on July 23, 2018. Ballestas' driving privileges were then reinstated on August 17, 2018. A copy of Case No. 2018TR014194A is attached hereto as **Exhibit "B."**

29. On November 27, 2018, prior to issuing the First Policy, Ballestas was issued a citation for speeding. Ballestas failed to pay the associated fines which resulted in the suspension of his driver's license on February 11, 2019. Ballestas was found GUILTY and his driving privileges were then reinstated on February 25, 2019. A copy of Case No. 18-TR-007884-A-K is attached hereto as **Exhibit "C."**

30. On February 27, 2019, prior to issuing the First Policy, Perseus had an automobile accident claim, wherein Ballestas backed into another vehicle resulting in settlements totaling $11,823. A copy of the case summary is attached hereto as **Exhibit "D."**

31. On January 18, 2021, Ballestas, had a loss involving a partial sinking of a Boston Whaler 38', which was reported to Plaintiffs.

32. On March 12, 2021, prior to issuing the First Policy, Ballestas was issued a citation for speeding. On March 1, 2022, Ballestas was found GUILTY due to failure to attend voluntary traffic school. Ballestas' drivers' license was suspended on December 9, 2021.. A copy of Citation No. AEIVGKE is attached hereto as **Exhibit "E."**

33. On April 26, 2021, prior to issuing the First Policy, Ballestas was issued a citation for speeding. Ballestas failed to pay the associated fines which resulted in the suspension of his driver's license on May 26, 2021. Ballestas was found GUILTY and his driving privileges were then reinstated on August 9, 2021. A copy of Case No. 50-2021-TR058066-AXXX-NB is attached hereto as **Exhibit "F."**

34. On October 1, 2021, Ballestas opened a claim to report a theft of a 2020 Yamaha Jet-Ski.

35. On January 3, 2022, prior to issuing the First Policy, Ballestas was issued a citation for speeding. Ballestas failed to pay the associated fines which resulted in the suspension of his driver's license on March 7, 2022. Ballestas was found GUILTY and his driving privileges were then reinstated on April 14, 2022. A copy of Case No. 22-TR-000743-A-P is attached hereto as **Exhibit "G."**

36. On April 11, 2022, Ballestas, signed the original application for the First Policy. At the time of signing the application, Ballestas' driver license was suspended. A copy of the original application for the First Policy is attached hereto as **Exhibit "H."**

37. In the original application of the First Policy, Ballestas disclosed that he had "Maybe a suspension for unpaid ticket" in the Violations/Suspensions (including Auto) in the last 5 years section of the application. *See* Ex. H.

38. In the original application of the First Policy, Ballestas disclosed that he had "1 speeding ticket in Key West, FL this past year." *See* Ex. H.

39. In the original application of the First Policy, Ballestas disclosed that he had been involved in a loss on January 18, 2021, involving a Boston Whaler 38' that took on took on water which resulted in a paid claim of $227,000. *See* Ex. H.

40. In the original application of the First Policy, Ballestas did not disclose that his license had been suspended a total of five times prior to applying for the First Policy and was currently suspended at the time of signing the original application of the First Policy. Ballestas did not disclose the jet-ski loss as part of the original application of the First Policy. *See* Ex. B, C, D, E, F, and G.

41. On June 24, 2022, prior to issuing the Second Policy, Ballestas opened a claim for theft of a 2019 Land Rover Range Rover resulting in settlement totaling $86,539.00.

42. On July 20, 2022, prior to issuing the Second Policy, Mr. Vivas was issued a citation for Driving While License Suspended unknowingly. According to the citation Mr. Vivas' driver license had been suspended on July 8, 2022. Mr. Vivas' citation was DISMISSED on September 9, 2022. A copy of Citation No. AGD5KIE is attached hereto as **Exhibit "I."**

43. On August 9, 2022, prior to issuing the Second Policy, Mr. Vivas was issued a citation for failure to obey stop light. Mr. Vivas failed to appear in court resulting in suspension of his driver license on January 13, 2023. The case was DISMISSED on March 21, 2023. A copy of Citation No. AGT7HQE is attached hereto as **Exhibit "J."**

44. On April 20, 2023, Ballestas signed a renewal application for the Second Policy indicating no changes from his original application, Exh. H, and making no new disclosures. A copy of the application for the Second Policy is attached hereto as **Exhibit "K."**

45. On June 28, 2023, prior to issuing the Third Policy, Ballestas was issued a citation for speeding. Ballestas failed to pay the associated fines which resulted in the suspension of his driver's license on August 8, 2023. Ballestas was found GUILTY on August 27, 2023. A copy of Citation No. A16VXTE is attached hereto as **Exhibit "L."**

46. On October 13, 2023, prior to issuing the Third Policy, Ballestas was issued a citation for speeding. Ballestas failed to pay the associated fines which resulted in the suspension of his driver's license on November 22, 2023. Ballestas was found GUILTY on December 1, 2023. A copy of Citation No. A2WH6ME is attached hereto as **Exhibit "M."**

47. On November 7, 2023, prior to issuing the Third Policy, Ballestas was issued a citation for running a stop light. Ballestas was found GUILTY on December 1, 2023. A copy of Citation No. AHXNDME is attached hereto as **Exhibit "N."**

48. On February 6, 2024, prior to issuing the Third Policy, Ballestas was issued a citation for running a stop sign. Ballestas failed to pay the associated fines which resulted in the suspension of his driver's license on March 18, 2023. Ballestas was found GUILTY on April 8, 2023. A copy of Citation No. AA39H8E is attached hereto as **Exhibit "O."**

49. On March 18, 2024, prior to issuing the Third Policy, Vivas was issued two citations for an expired tag and failure to provide registration certificate respectively. Mr. Vivas failed to pay the associated fines which resulted in the suspension of his driver's license on April 26, 2024. Both citations were DISMISSED on July 24, 2024. A copy of Citation No. AJE4O8E and AJE4O9E is attached hereto as **Exhibit "P."**

50. On April 11, 2024, Ballestas signed a renewal application for the Third Policy in which no new disclosures were made. A copy of the application for the Third Policy is attached hereto as **Exhibit "Q."**

51. On December 19, 2024, prior to issuing the Policy, Ballestas was issued a citation speeding. Ballestas failed to pay the associated fines which resulted in the suspension of his driver's license on February 4, 2025. A copy of Case No. 24-TR-029584-A-M is attached hereto as **Exhibit "R."**

52. On April 23, 2025, Ballestas signed a renewal application for the Policy in which no new disclosures were made. A copy of the application for the Policy is attached hereto as **Exhibit "S."**

53. When Perseus applied for the First Policy, Second Policy, Third Policy, and current Policy, it represented that its beneficial owner and its named operator, Ballestas, had potentially one driver license suspension, one speeding ticket, and a January 2021 partial sinking loss for $227,000 disclosed. *See* Ex. H, K, Q, and S.

54. When Perseus applied for the Second Policy, Third Policy, and current Policy, it represented that its named operator, Vivas, had no losses, violations, or suspensions. *See* Ex. K, Q, and S.

55. These representations—both on the original application and on the renewal questionnaires—were false. A table of all disclosures and omissions referenced above is produced for ease of reference below:

| Operator | Disclosed | Omitted |
|---|---|---|
| Victor Ballestas | **April 11, 2022, Original Application**<br>• Maybe a suspension for an unpaid ticket<br>• 1 speeding ticket<br>• January 18, 2021 loss involving a Boston Whaler 38' | **Citations Prior to Original Application signed April 11, 2022**<br>• June 13, 2018. Speeding ticket which resulted in suspension of driver license on July 23, 2018. 23 mph over speed limit.<br>• November 27, 2018, speeding ticket which resulted in suspension of driver license on February 11, 2019. 9 mph over speed limit.<br>• March 12, 2021, speeding ticket which resulted in suspension of driver license on December 9, 2021. 10 mph over speed limit.<br>• April 26, 2021, speeding citation resulting in suspension of driver license on May 26, 2021. 17 mph over speed limit<br>• January 3, 2022, speeding ticket resulting in suspension of driver license on March 7, 2022. Driving privileges reinstated on April 14, 2022, after application signed. 6 mph over speed limit, reduced from 21 mph over speed limit. |

| | | |
|---|---|---|
| | **April 20, 2023 Signed Renewal Application**<br><br>• 2022 Speeding<br>• Re-Disclosure of Jan 2021 partial sinking<br><br>**April 11, 2024, Renewal Application**<br><br>• No new disclosures<br><br>**April 23, 2025, Renewal Application**<br><br>• No new disclosures | **Citations Prior to April 20, 2023 Signed Renewal Application**<br><br>• June 24, 2022, report of stolen 2019 Land Rover resulting in $86,539.00 settlement<br><br>**Citations Prior to April 11, 2024, Signed Renewal Application**<br><br>• June 28, 2023, speeding violation resulted in suspension of driver license on August 8, 2023. 19 mph above the speed limit.<br>• October 28, 2023, speeding violation resulted in suspension of driver license on November 22, 2023. 17 mph above the speed limit.<br>• November 7, 2023, running a stop light citation issued<br>• February 6, 2024, citation for running a stop sign. Failed to pay fines resulting in suspension of driver license on March 18, 2024.<br><br>**Citations Prior to April 23, 2025, Renewal Application**<br><br>• December 19, 2024, speeding violation resulted in suspension of driver license on February 4, 2025. 27 mph over speed limit. |
| Julio Eduardo Araque Vivas | **April 20, 2023 Signed Renewal Application**<br><br>• No disclosures<br><br>**April 11, 2024, Renewal Application**<br><br>• No disclosures<br><br>**April 23, 2025, Renewal Application**<br><br>• No disclosures | **Citations and losses prior to being a named operator**<br><br>• November 8, 2017 Marine Workers Compensation claim for Shingles through Kirby Inland Marine LP<br>• July 20, 2022, citation for Driving While License Suspended Unknowingly. Ultimately dismissed.<br>• August 9, 2022, citation for failure to obey stop light resulting in suspension of driver license on January 13, 2023. Ultimately dismissed. |

| | | |
|---|---|---|
| | | **April 20, 2023 Signed Renewal Application Signed**<br>• March 18, 2024, citation for expired tags (6 months or less) and failure to provide registration certificate resulting in driver license suspension on April 26, 2024. Ultimately dismissed.<br>**April 11, 2024, Renewal Application Signed** |

56. In fact, Ballestas has an extensive driving record and unnamed losses including but not limited to the following:

a. Eleven total driver license suspensions between June 13, 2018, and March 18, 2024.

b. Ballestas' license being suspended at the time of the initial application.

c. An open claim for theft of a Jet-Ski in 2020.

d. An open claim for an automobile accident in 2025, in which it appears that Victor Ballestas was the passenger.

62. Vivas also has an extensive driving record, including but not limited to the following:

a. Three total driver license suspensions between January 13, 2023, and May 30, 2025.

b. A loss on November 8, 2017, for a Marine Workers Compensation claim for Shingles.

63. When Perseus applied for the First Policy, Perseus failed to disclose an automobile claim wherein on February 27, 2019, Ballestas backed into another vehicle resulting in settlements totaling $11,823.00.

**<u>COUNT I: UBERRIMAE FIDEI</u>**

64. Plaintiffs reallege and reincorporate the allegations of paragraphs 1 through 63 as if more fully set forth at length, herein.

65. For hundreds of years, polices of marine insurance have been subject to the well-entrenched doctrine of *uberrimae fidei*, the duty of utmost good faith.

66. This duty requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of insurance risk.

67. This duty extends even to material facts that are not specifically inquired into by the insurer.

68. The Policy, as one of marine insurance—and pursuant to the terms of its choice-of-law provision—is governed by *uberrimae fidei*.

64. Plaintiffs would not have issued the Policy would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had they known any one or any combination of the facts set forth in paragraphs 1 through 63 above, or others to be established in the course of discovery.

65. Accordingly, Perseus breached the duty of *uberrimae fidei*, rendering the Policy void from its inception.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Perseus violated the doctrine of *uberrimae fidei*, such that there is no coverage for the subject loss and the Policy is void from its inception. Plaintiffs further requests any further relief that the Court deems just and appropriate under the circumstances.

**COUNT II– BREACH OF GENERAL CONDITION XII**

66. Plaintiffs readopt and reallege the allegations contained in paragraphs 1 through 64 as if more fully set forth at length herein.

67. General condition xii. of the Policy provides that "This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our

acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision."

68. Plaintiffs would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had it known any one or any combination of the facts set forth in paragraphs 1 through 64 above, or others to be established in the course of discovery.

69. Accordingly, Perseus breached general condition xiii. of the Policy, rendering the Policy void from its inception

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Perseus breached general condition xii. of the Policy, such that there is no coverage for the subject loss and the Policy is void from its inception. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

**COUNT III– BREACH OF IMPLIED NEGATIVE WARRANTY OF SEAWORTHINESS**

70. Plaintiffs readopt and reallege the allegations contained in paragraphs 1-26 as if more fully set forth at length herein.

71. Under the general maritime law of the United States, there is implied in every policy of marine insurance a negative warranty that that the vessel's owner, from bad faith or neglect, will not knowingly permit the vessel to break ground in an unseaworthy condition.

72. Breach of this warranty voids coverage from its inception irrespective of whether the unseaworthy condition causes a loss.

73. A vessel is seaworthy if it is reasonably fit for its intended purpose.

74. Unseaworthiness is a condition. How that condition arose, whether by negligence or otherwise, is irrelevant.

69. On April 10, 2025, Unlimited Diesel Services performed repair work on the Vessel's port engine for overheating. A copy of the repair invoice is attached hereto as **Exhibit "T."**

75. On July 5, 2025, while the Vessel was in the Bahamas, Compass Marine serviced the Vessel's port engine for overheating. *See* Pg. 14 of Binnacle Meridian Marine Consultants Marine Safety Investigation Report. A copy of the Binnacle Meridian Marine Consultants Marine Safety Investigation Report is attached hereto as **Exhibit "U."**

76. Perseus, following the July 5, 2025, service opted to self-perform the scheduled sea trials subsequent to the work being completed and later reported the engine was fully functional. *Id*.

77. Two days later, on the date of the loss, the source of the ingress for the water was the port engine exhaust discharge hose having become detached from the exhaust. A photo of the hose is produced below.



78. As can be seen in the photograph a significant amount of soot has accumulated in the system.

79. The fact that so much soot accumulated in the system is indicative of improper maintenance.

80. On the date of the loss, the Vessel was unseaworthy by virtue of improper maintenance of the engines.

81. By failing to maintain the engines the buildup of soot resulted in excessive pressure causing the hose to disconnect.

82. Perseus knew that the Vessel engines had issues. Despite knowledge of the port engine overheating issues, the Vessel broke ground anyway.

83. The improper maintenance of the port engine was the proximate cause of the Vessel sinking.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that CFC breached the Policy's implied negative warranty of seaworthiness, such that there is no coverage for the subject loss. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

**COUNT IV – BREACH OF EXPRESS WARRANTY OF SEAWORTHINESS**

84. Plaintiffs readopt and reallege the allegations contained in paragraphs 1-26 and 70-83 as if more fully set forth at length herein.

85. General condition i. of the Policy provides that "It is warranted that the Scheduled Vessel is Seaworthy at all times during the duration of this Insuring Agreement. Breach of this warranty will void this Insuring Agreement from its inception."

86. On the date of the loss, the Vessel was unseaworthy by virtue of the improper maintenance of the port engine.

87. As a result, Perseus breached the Policy's express warranty of seaworthiness, therefore voiding coverage from its inception.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Perseus breached the Policy's express warranty of seaworthiness, such that there is no coverage for the subject loss and the Policy is void from its inception. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

**COUNT V– EXCLUSION FOR LACK OF ACCIDENTAL EXTERNAL EVENT**

88. Plaintiffs readopt and reallege the allegations contained in paragraphs 1-26 as if more fully set forth at length herein.

89. Exclusion xviii. of the Policy excludes from coverage "Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire."

90. As a result of the loss, the Vessel sustained damage to her engines, mechanical parts, and electrical parts.

91. The loss was not caused by collision.

92. The loss was not caused by impact with a fixed or floating object.

93. The loss was not caused by grounding.

94. The loss was not caused by stranding.

95. The loss was not caused by ingestion of a foreign object.

96. The loss was not caused by a lighting strike.

97. The loss was not caused by fire.

98. The loss was caused by water entering the Vessel through the port engine exhaust discharge hose having become detached from the exhaust system.

99. The partial sinking of the Vessel and the resultant damages were not caused by an "accidental external event" within the meaning of the Policy.

100. It is Perseus' burden to prove that damage to the engines, mechanical parts, and electrical parts was caused by an "accidental external event."

101. Perseus has not established that the damage to the engines, mechanical parts, and electrical parts was caused by an "accidental external event."

102. As a result, any damage to the Vessel's engines, mechanical parts, or electrical parts are not covered by the Policy.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that the loss to the Vessel was not caused by an "accidental external event," such that there is no coverage for any damage to the Vessel's engines, mechanical parts, or electrical parts. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

Dated: November 19, 2025.

Respectfully submitted,

**DAVANT LAW, P.A.**
*Attorneys for Plaintiffs*
100 NE Third Ave, Suite 440
Fort Lauderdale, FL 33301
Telephone: (954) 414-0400

By: */s/ Charles S. Davant*
Charles S. Davant
Florida Bar No. 15178
csd@davantlaw.com
Christopher M. Fernandez
Florida Bar No. 1030892
cfernandez@davantlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this November 19, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served a copy thereof on all counsel of record.

*/s/ Charles S. Davant*
Charles S. Davant